**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID MICHAEL MONTGOMERY, | * | |
| #412797 | * | Civil Action ELH-13-930 |
| | * | (Consol. Civil Action ELH-13-931) |
| Plaintiff, | * | |
| | * | |
| v | * | |
| | * | |
| JASON BIGHAM, et al. | * | |
| | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

David Michael Montgomery, the self-represented plaintiff, is presently an inmate at the Maryland Correctional Training Center in Hagerstown, Maryland.  He has filed suit, later amended and then supplemented, against a host of defendants, pursuant to 42 U.S.C. § 1983, arising from his arrest on January 5, 2013, and subsequent detention.  *See* ECF 1, 7, 12.  As relief, he requests $1 million, ECF 7 at 13; a lesser sentence in a state criminal case,[1] *id.*; and to have "the officers fired."  ECF 12 at 13.

Motions to dismiss or, in the alternative, for summary judgment have been filed by counsel on behalf of defendants Conmed, Inc. ("Conmed") (ECF 21); Sergeant Michael Galligan, Corporal Scott Pederson,[2] Patrolman First Class K. J.  Jenkins, Corporal Jamie Grover, and the Anne Arundel County Police Department (the "AACPD Defendants") (ECF 28); Warden

---

[1]  On December 30, 2013, in the Circuit Court for Carroll County, Criminal Case No. 06-K-13-043713, Montgomery pleaded guilty to second-degree murder and armed robbery/attempted armed robbery, pursuant to an agreed statement of facts.  He was sentenced to a total of thirty years of incarceration. http://casesearch.courts.state.md.us/inquiry/inquiryDetail. jis?caseId=06K13043713&loc=61 &detailLoc=K.

[2]  Defendant's last name is misspelled as "Paderson" in the complaint. ECF 1 and 12. The docket will be corrected to reflect the proper spelling of defendant's surname.

Hardinger (ECF 34);[3] and the Maryland Department of State Police,[4] Corporal Jason Bigham,

Trooper Christopher Bishop, Sergeant John Carhart, Senior Trooper Jeffrey B. Claycomb,

Sergeant Edward Eicher, Senior Trooper Frank Fornoff, Trooper Christopher Taylor, and Senior

Trooper Edward Winkler (the "MSP Defendants") (ECF 36).   Numerous exhibits have also been

submitted by the defendants in support of the motions.   Montgomery has replied in opposition.

*See* ECF 26, 33 38 and 39.[5]   The matter has been briefed and no hearing is necessary to resolve

the motions. *See* Local Rule 105.6 (D. Md.).

## STANDARD OF REVIEW

Defendants' motions are captioned as motions to dismiss under Fed.R.Civ.P. 12(b)(6) or,

in the alternative, for summary judgment under Fed.R.Civ.P. 56.   Conmed, AACPD, and MSP

also submitted affidavits and records to support their motions.

Motions styled as motions to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative,

for summary judgment implicate the court's discretion under Rule 12(d) of the Federal Rules of

Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d

431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings

---

[3] Counsel entered an appearance on behalf of Warden Hardinger and the Carroll County Detention Center, but the motion addresses claims only as to Hardinger. Nevertheless, the Carroll County Detention Center shall be dismissed from this case because it is not a "person" subject to suit under 42 U.S.C. § 1983. *See, e.g., Marsden v. Fed. Bureau of Prisons,* 856 F. Supp. 832, 836  (S. D.N.Y. 1994)("jail is not an entity that is amenable to suit"); *Powell v. Cook County Jail,* 814 F.Supp. 757 (N.D. Ill. 1993) (jail not subject to suit).

[4] Insofar as Montgomery also names "State Police Westminster," a division of the Maryland State Police, it is not a "person" subject to suit under 42 U.S.C. § 1983. *See, e.g., Will v. Michigan Dept. of State Police,* 491 U.S. 58,  65 (1989); *Marsden v. Fed. Bureau of Prisons,* 856 F. Supp. at  836; *Powell,* 814 F.Supp. at 757.

[5] Notice of defendants' dispositive motions and the opportunity to file affidavits and records in response were sent to Montgomery pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  ECF 22, 30, 35 and  37. Montgomery filed no affidavits or other verified exhibits.

or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998). [6]   As earlier noted, Montgomery was informed of his right to file a response to the Motion and the opportunity to submit affidavits, declarations, and other documentary evidence.  And, he has replied.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed.2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). Plaintiff has not filed an affidavit under Rule 56(d), but has submitted an opposition.

I am satisfied that it is appropriate to address the motions (ECF 21, 28, 34, and 36) as motions for summary judgment. This will facilitate the progress and resolution of the case.

Summary judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986). The Supreme

Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed.R.Civ.P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). However, the court must "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89 94 (2007). Nevertheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

## FACTUAL BACKGROUND

Montgomery claims that at his arrest on January 5, 2013, he had cuts on his hand, wrist, and finger from a vehicular accident which occurred just hours before. He also asserts that he suffered back and neck pain and migraine headaches as a result of the accident. ECF 7 at 5.[7] Plaintiff maintains that, as a result, he should have been transported to the hospital. Montgomery, who acknowledges that he was "very high and drunk," complains he was not even offered band aids. ECF 1 at 3. Instead, he was questioned and then sent to the Carroll County Detention Center ( "Detention Center"). *Id.* at 2-3.

Montgomery claims the medical treatment he subsequently received at the Detention Center was inadequate. He faults the medical department for failing to recognize and treat his drug withdrawal symptoms from "crack," "dope," "weed," "meth," "K-2,"[8] and alcoholism, bipolar disorder, ADHD (attention deficit hyperactivity disorder), and insomnia, noting he was on medically prescribed Lithium and Adderall at the time of arrest. ECF 1 at 2-3. Yet, Montgomery claims that one month elapsed before he was given his prescribed medications at the Detention Center. *Id.* Additionally, he complains that he was not provided with any medication to alleviate pain caused by withdrawal symptoms.

Further, Montgomery alleges that he attempted suicide three times in one day in his jail cell and should have been hospitalized for treatment. *Id.* at 3-4. In this regard, he asserts that he

---

[7] Montgomery also claims he brings this action "because the Anne Arundel County Police and the Westminster State police messed with my evidence in the murder case that is pending for me…." ECF 33 at 11 ¶ III. Insofar as Montgomery is seeking to dispute evidence introduced in his state criminal trial, he may not do so in this action. To this end, his motion to discover evidence (ECF 42), related to his questioning at the police barracks, will be denied. After Montgomery exhausts his available state court remedies, however, he may dispute his state judgment and sentence by seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

[8] "K-2" is a synthetic cannabis. *See* http://www.justice.gov/dea/pr/multimedia-library/publications/ drug_of _abuse. pdf#page=62.

tried hanging himself twice and once jumped down from the top bunk face down. *Id.* at 4. Montgomery seems to state that his suicide attempts exacerbated his pain from injuries sustained in another vehicle crash, which occurred in 2008. *Id.*   ECF 38 at 5.

The AACPD Defendants' motion, supported by a memorandum and the affidavit of Corporal Scott Pederson of the Anne Arundel County Police, provides the following information. On January 5, 2013, at 11:48 a.m., Pederson was dispatched to a 7-Eleven convenience store in Baltimore to check on a report of a parked vehicle with an inflated airbag and an apparently intoxicated individual.  At 12:01 p.m. Pederson and Sergeant Michael Galligan arrived and saw Montgomery standing along the driver's side of a gold Hyundai minivan.  ECF 28, Exhibit 1. When asked by the officers how he had arrived there, Montgomery informed them that someone had driven him there. Pederson informed Montgomery that a witness had reported observing Montgomery driving the vehicle and that Galligan was inside the convenience store checking the video security tapes.  *Id.*   Because Montgomery began to act "fidgety and nervous," Pederson patted him down to make sure he was unarmed.   Upon finding marijuana and cocaine in Montgomery's pockets, Pederson placed Montgomery in handcuffs.  Pederson attests: "At no time when I was observing or interacting with David Michael Montgomery did he appear to be in need of immediate medical attention.  At no time did he request to be provided immediate medical attention." *Id.*  ¶ 9.

A routine telex check showed Montgomery and the minivan were sought in connection with a homicide in Westminster, Maryland, and the Maryland State Police were contacted. *Id.* Shortly thereafter, Maryland State Police officers J. Bingham and E. Winkler arrived to take custody of Montgomery. Once custody was transferred, the AACPD Defendants had no further contact with Montgomery.  *Id.*

The MSP Defendants' response is substantiated by declarations and records, and indicates that Sergeant John Carhart was contacted by Anne Arundel County Police after discovering Montgomery was wanted in connection with a homicide. Defendants Bigham and Fornoff, along with members of the Maryland State Apprehension Unit, were already searching in the Brookland Park, Maryland area for Montgomery, who was wanted for a suspected homicide, and were alerted. ECF 36. Exhibit 1, at ¶ 3 and Exhibit 2 at ¶ 3.  After defendants Fornoff and Claycomb arrived, Montgomery was transferred to the custody of the Maryland State Police.

Senior Trooper Winkler observed a cut on Montgomery's hand.  *Id*. Exhibit 4.  The cut was documented because Montgomery was wanted for homicide and the injury could have been related to that offense.  *Id*.  Winkler's investigation report indicates Montgomery had "a piece of black electrical tape bandage his right index finger [sic]."[9]  *Id*. Attachment.  In his Declaration, Winkler stated he did not "recall seeing any other injuries to Mr. Montgomery.  At no time did Mr. Montgomery request medical assistance while in my presence."  *Id*. at ¶ 7.

Troopers Bigham and Fornoff attest that Montgomery was walked from an Anne Arundel County Police Department vehicle to a Maryland State Trooper's vehicle without assistance, to effectuate the transfer.  *Id*. Exhibit 1 ¶ 10 and Exhibit 2 ¶ 6.  Corporal Bigham avers that, to the best of his knowledge, he does "not recall observing any signs of injury to Mr. Montgomery.  At no time did Mr. Montgomery request medical assistance" in Bigham's presence.  *Id*. Exhibit 1 ¶ 9.  Similarly, Fornoff and Winkler aver that they do not recall

---

[9] The investigation report indicates that pieces of electrical tape were on the front of the minivan hood and covered portions of numbers on the license plate.  ECF 36, Exhibit 4, attachment.

observing any signs of injury to Montgomery and at no time did he request medical assistance in their presence. *Id*. Exhibit 2 ¶ 9, and Exhibit 4  ¶ 7.

During transport to the police barrack, Montgomery fell asleep and awoke once to ask about the person who had been driving the van at the convenience store and was involved in the traffic accident.  *Id*. Exhibit 2, at ¶ 7.  Trooper Fornoff answered that he was unaware of such a person.  Montgomery then went back to sleep.  *Id*.  Fornoff transferred custody of Montgomery to a sergeant upon arrival at the barrack.  *Id.* at ¶ 8.

Defendants Carhart, Eicher, Taylor, Claycomb, and Bishop were involved in securing the scene, gathering evidence, and searching the residence of Montgomery's sister in Anne Arundel County.  They assert that they had no contact or very limited contact with Montgomery.  In their declarations, defendants Carhart, Eicher, and Taylor state that they did not observe, communicate or have any physical contact with Montgomery.  *Id*.  Exhibit 3, at ¶ 6, Exhibit 7 at ¶ 7, and Exhibit 8 at ¶ 8.  Defendants Claycomb and Bishop declare they never communicated or had physical contact with Montgomery; the only time they observed Montgomery was while he was seated in the back seat of the Anne Arundel County Police vehicle.  *Id*. Exhibit 5 and 6.  Further, Bishop states that Montgomery did not request medical attention in his presence. *Id*. Exhibit 6.

 Defendant Conmed, a private contractor providing medical services to inmates at the Detention Center, has filed about 73 pages of Montgomery's medical records.  The records show Montgomery entered the Detention Center on January 5, 2013, received an intake medical screen at 9:55 p.m. on that date, conducted by the intake correctional officer, and at 1:00 a.m. on January 6, 2013, a Conmed employee conducted a medical screening.  ECF 21 at 5-12, 19. Neither the intake nor medical screening noted any complaint or observation of physical injury.

*Id*. at 6.[10]   Later that day, Montgomery complained of chest pain. *Id*. at 20.   Conmed's memorandum in support of its dispositive motion states that "the chest pains were separately addressed and no connection to withdrawal was associated with this incident," (citing to ECF 2 Exhibit 2 at 19).  ECF 21, Memorandum at 2.[11]   Montgomery was given an electrocardiogram,[12] which returned normal results, and he was instructed to return to the health unit if his pain persisted.  *Id*. at 17, 20, and 64.  He complained and was seen again for chest pain on January 13, 2013.  *Id*. at 17.   On January 7, 2013, Montgomery's health assessment showed no musculoskeletal tenderness or joint deformity.  *Id*. at 12.

Because Montgomery reported he was using methadone and heroin prior to arrest, a detoxification protocol was initiated at intake.  *Id*. at 6-7.  During the detoxification period, January 6-10, 2013, Montgomery was observed and his vital signs were recorded.  *Id*. at 72-73. However, Conmed has not explained the detoxification protocol or addressed Montgomery's claim of medication delay.

Montgomery's medical notes, dated January 7, 2013, reflect that officers noticed a "make shift noose made of a blanket shredding balled up behind the mattress against the wall appx. 5 ft away" from Montgomery.  *Id*. at 19.  Nothing was around or near Montgomery and no redness or bruising to his head was observed.  *Id*.  A red mark was noted on Montgomery's ear, but did not continue beyond the ears.  *Id*.  Montgomery was placed in a suicide suit and he was put on

---

[10] Montgomery, who reported facial and stomach pain, stated he has plates and screws on the left side of his face from an injury he received in 2008 or 2009.  ECF 21, Exhibit 2 at 9-10, 20.

[11]  Absent specific notation in the medication chart or an affidavit from a medical provider, it is unclear to the court how counsel reached this conclusion.

[12]  An electrocardiogram (EKG or ECG) is a test that checks for problems with the electrical activity of the heart. The test is performed to find the cause of unexplained chest pain or symptoms of heart disease.  *See* http://www.webmd.com/heart-disease/electrocardiogram.

suicide observation.  *Id*.  A separate entry, also dated January 7, 2013, indicates that the medical provider was called after an officer heard a "thunk" in Montgomery's cell.  *Id*. at 20. Montgomery was found lying on the floor.  *Id*.  His vital signs were taken and he responded to verbal stimuli.  *Id*.  Red marks were noted on his neck from ear to ear.  *Id*.  Montgomery, who was able to stand unassisted, helped officers place him in a suicide suit and was put on suicide watch.  *Id*. at 18- 19.  Plaintiff complained of left arm pain, but was able to move his arms and legs.  *Id*. at 19, 24-25.  Less than one hour later, Montgomery asked why his mental health medications had not been ordered.  *Id*. at 19.  It was explained to Montgomery that methadone and Adderall are not typically given at the Detention Center, and that a referral had already been made to a mental health doctor.  *Id* at 18.  Montgomery reportedly stated "fuck this place, I'll let my lawyer know."  *Id.*  On January 7, 2013, plaintiff signed a consent form for his psychiatric and medical records to be sent to Conmed.  *Id*. at 65.  *Id.*

At 7:15 the following morning, Montgomery was given a neurological examination.  *Id*. at 19, 24-25.  The examination showed Montgomery ambulated without assistance and was calm and cooperative.  *Id*.  Redness was noted from ear to ear, but there was no redness on the back of Montgomery's neck or head.  *Id*.

A note to the chart on January 9, 2013, shows Montgomery requested medication for pain and to help him sleep.  A ligature mark around his neck was observed from the attempted suicide.  *Id*. at 18.  Summary notations show Montgomery was seen by mental health providers on January 7, 8, 9, 11, 14, 18, 21, 22, February 7, 8, 16, 18, and March 6, 19, 2013.  *Id*. at 15, 16, 18, 28, 33-35, 37-51.  The assessments, recommendations, and treatments provided by the mental health practitioners are unstated in the record.

Conmed does not dispute Montgomery's claim that one month elapsed before he was provided medication. The medical chart, however, appears to show lithium was prescribed for Montgomery on January 18, 2013, and February 6, 2013. *Id.* at 22-23. Montgomery was prescribed Tylenol and/or Motrin on January 9, 10, and 21, 2013. *Id.*

## DISCUSSION

In order to state a claim for the denial of medical care, a pre-trial detainee must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). [T]o establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692. 695 (4th Cir. 1999) (2000). This applies in both the Eighth Amendment prisoner context and for detainees under the Fourteenth Amendment. *See Parrish ex rel Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988).

Deliberate indifference occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Fourth Circuit has said: "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mt. Rainer*, 238 F.3d 567, 576 (4th Cir. 2001). So, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the official should have recognized the risk; he or

she must have perceived the risk and recognized that his/her actions were inappropriate in light of that risk.  *Parrish ex rel. Lee*, 372 F.3d at 302-303 (4th Cir. 2004).

A health care provider must have actual knowledge of a serious medical condition, not just knowledge of the symptoms.  *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). "Conduct that is merely negligent, or even reckless, is insufficient."  *Brown v. Middleton*, 362 F.App'x. 340, 344 (4th Cir. 2010).  Rather, a defendant must have actual notice of the danger because the "law cannot demand that officers be mind readers."  *Grayson v. Peed*, 195 F.3d at 695.

### AACPD Defendants

Montgomery faults the AACPD Defendants for failing to transport him to a hospital instead of interrogating him and sending him to the Detention Center.  The evidence shows the AACPD Defendants questioned Montgomery, patted him down, arrested him, and transferred him to the custody of the Maryland State Police.  Defendants' affidavits establish Montgomery did not ask for medical assistance, nor did he show any serious physical injury warranting immediate medical care or transportation to a hospital.  The AACPD Defendants' account of the arrest and Montgomery's lack of serious injury is bolstered by the accounts of the MSP Defendants, and the intake reports written when Montgomery was received at the Detention Center.  Neither the custody screening nor the medical screening reports include any complaint of physical injury or any observation of injury.

Montgomery has failed to provide an affidavit or verified pleadings suggesting a dispute of material fact.  In contrast, the AACPD Defendants have shown that there is no genuine dispute as to any material fact.  Therefore, they are entitled to summary judgment as a matter of law.

**MSP Defendants**

The MSP Defendants' evidence shows Montgomery was transferred to the custody of Trooper Fornoff and transported to the Maryland State Police barrack. There is no evidence that, at the time, Montgomery had serious injuries warranting immediate medical assistance. According to the evidence submitted to the Court, Montgomery did not request medical assistance. Rather, the evidence shows Montgomery walked unassisted to the Trooper's care when custody was transferred and fell asleep during the ride to the barrack. Defendants Fornoff, Winkler, and Bigham state in their affidavits that they do not recall observing any signs of injury to Montgomery and at no time did he request medical assistance in their presence. Further, Montgomery does not dispute that defendants Carhart, Eicher, Taylor, Claycomb, and Bishop had no contact or very limited contact with him. And, as noted above, Detention Center intake reports contain no complaint or observation of physical injury.

Thus, even when the facts are viewed in the light most favorable to Montgomery, no dispute of material fact is shown. Therefore, the MSP Defendants are entitled to summary judgment as a matter of law. [13]

**Conmed**

Montgomery faults Conmed for failing to recognize and treat his drug withdrawal symptoms. Additionally, he complains that he was not given medication to alleviate pain caused by withdrawal symptoms. He also states that he was on medically prescribed Lithium and Adderall at the time of arrest, yet he did not receive his prescribed medication for an entire month. During the first days of his confinement, Montgomery claims he attempted suicide three times.

---

[13] Given this determination, the court need not reach defendants' qualified immunity defense.

14

Conmed posits that Montgomery's medical records show that he had no observable injury necessitating medical treatment, nor did he bring attention to such injury at the time of intake. Plaintiff was placed on a detoxification protocol, and he was able to ambulate and respond after his suicide attempt.  On this basis, Conmed asserts that deliberate indifference to serious medical needs has not been shown, and Montgomery's medical care was not inadequate.  Conmed also seeks summary judgment because liability under 42 U.S.C.§ 1983 may not be premised on principles of respondeat superior.

To be sure, vicarious liability based on respondeat superior is generally inapplicable to § 1983 actions.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978).  However, the claims are not predicated on vicarious liability.  Moreover, Conmed's exhibits are not entirely self-explanatory, and Conmed has not addressed the nature of the "detox protocol," Montgomery's assertions of multiple suicide attempts, or his claims concerning delay in providing medication. Indeed, no declarations were provided by a medical provider who treated Montgomery at the Detention Center.  Further, although it appears Montgomery is shown as having been seen by unnamed mental health practitioners, their findings, particularly in regard to Montgomery's bipolar disorder, disruption of his Lithium, and suicide attempts are absent from the record before this court.

Mindful that Montgomery is a *pro se* litigant and that there are genuine issues of material fact concerning the care that plaintiff was provided, the court finds appointment of counsel necessary so that discovery may be conducted to amend the complaint to name the medical and mental health practitioners who attended to Montgomery during his confinement at the detention center.  Accordingly, Conmed's Motion for Summary Judgment will be denied.

**Warden Hardinger**

Warden Hardinger seeks dismissal of the claims against him, or summary judgment, and adopts and incorporates by reference Conmed's motion to dismiss, or in the alterative, motion for summary judgment.  As a nonmedical correctional supervisor, Hardinger is entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the course of treatment necessary for inmates.  *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with an inmate's medical treatment ordered by such personnel).

Montgomery does not allege Hardinger was personally involved in his medical treatment or otherwise impeded it.  As noted, there is no respondeat superior liability available to a plaintiff under § 1983.  Consequently, Hardinger's motion will be granted.

## CONCLUSION

For the above reasons, the motions filed by the AACPD Defendants (ECF 28), the MSP Defendants (ECF 36), and Warden Hardinger (ECF 34), treated as motions for summary judgment, will be granted.  Conmed's motion (ECF 21), treated as a motion for summary judgment, will be denied.  A separate Order follows.


February 12, 2014                              _____/s/_____
Date                                           Ellen Lipton Hollander
                                               United States District Judge

16